## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Harlan, John Jalili, Oral Janice, Ernesto Lara, Larry Porter, and James Wilkinson, | |
| | Case No. 20-cv-1933 |
| Plaintiffs, | |
| v. | **NOTICE OF REMOVAL** |
| 3M Company and Aearo Technologies LLC, | |
| Defendants. | |

Defendant 3M Company ("3M") hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, to the United States District Court for the District of Minnesota.

Plaintiffs are former military contractors[1] who seek to hold Defendants 3M and Aearo Technologies LLC[2] liable for hearing loss they allegedly suffered from noises they were exposed to during their work, including gunfire, artillery, explosives, and other machinery. This case is one of hundreds of lawsuits filed against 3M alleging injuries

---

[1] The Complaint omits nearly all details about Plaintiffs' work and use of the CAEv2. Some Plaintiffs were contractors with the Department of Defense while others were contractors with private companies. The few facts alleged in the Complaint indicate that even those Plaintiffs who worked for private companies were military contractors. (*See, e.g.,* Compl. at ¶ 13 (Plaintiff Harlan "worked as a civilian contractor for K.B.R., Inc." but the majority of his work was spent "operating trucks on and between various military bases, with the majority of his time spent working on Balad Air Base in Iraq.").)

[2] 3M acquired Aearo Technologies, Inc. ("Aearo") in 2008. After acquiring Aearo in 2008, 3M continued to sell CAEv2. Aearo Technologies LLC, named in the Complaint, is a different entity from Aearo. Nonetheless, it consents to this removal.

caused by Combat Arms™ Earplugs, Version 2 ("CAEv2"), almost all of which have been removed to the District Court of Minnesota and transferred to a Multidistrict Litigation Court ("MDL Court") in the Northern District of Florida. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.* ("*In re 3M*"), No. 3:19-md-2885, 2020 WL 365617, at *1 (N.D. Fla. Jan. 22, 2020). The MDL Court has denied remand for each of the cases transferred to the MDL, including those involving non-military plaintiffs. *Id.*; *see also Pate v. 3M Co.*, No. 19-cv-00793-JRT-KMM, Dkt. No. 1-1, Compl. ¶¶ 8-9 (D. Minn. Mar. 21, 2019) (case involving non-military plaintiff transferred to MDL); *Denman v. 3M Co.*, No. 19-cv-921-NEB-SER, Dkt. No. 1-1, Compl. ¶ 1 (D. Minn. Apr. 3, 2019) (same).

The few cases remanded to state court by the District of Minnesota differed from other cases in that they involved plaintiffs who alleged no relation to the military. *See Trail v. 3M Co.*, No. CV 20-1153 (JRT/KMM), 2020 WL 4193868 (D. Minn. July 21, 2020) (remanding claims brought by a firefighter, helicopter mechanic, heavy machinery mechanic, molding manufacturer, and boilermaker); *Graves v. 3M Co.*, *Co.*, No. CV 19-3094 (JRT/KMM), 2020 WL 1333135 at *1 (D. Minn. Mar. 23, 2020) (remanding claim brought by a police officer). Additionally, the only federal defense alleged by Defendants in those cases was the government contractor defense. *Id.* In those cases, the court concluded that 3M met most elements of the federal officer removal statute, but failed to demonstrate a colorable federal defense. *Graves*, 2020 WL 1333135 at *8-*13[3]; *see also*

---

[3] This Court, in *Graves*, determined that there was a causal connection between 3M's actions and its official authority. *Id.* at *7-*8. While the Court did not expressly determine that 3M was a "person" that was "acting under" the direction of a federal officer, such a

*Trail*, 2020 WL 4193868 at \*4 (remanding "for the same reasons outlined in *Graves*."). Like the plaintiffs in *Graves* and *Trail*, Plaintiffs are civilians who assert only failure-to-warn claims. But, unlike *Graves* and *Trail*, several Plaintiffs, including Plaintiffs Harlan, Janice, Lara, Porter, and Wilkinson, allege that their injuries arose from their participation in combatant activities and/or on federal enclaves. These factual differences provide additional grounds for removal.

In this action, 3M intends to assert the federal government contractor defense and the combatant activities defense. Aearo sold the CAEv2 to the U.S. military under government contracts and in accordance with the military's rigorous specifications. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defenses adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008) (*citing Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 (2007)).

Separately, this action is also removable because one or more Plaintiffs seek to hold 3M liable for alleged injuries that occurred in part at federal enclaves. While Plaintiffs do not identify these facilities specifically in their Complaint, they are almost certainly "federal enclaves" for jurisdictional purposes. "Federal courts have federal question

_____

determination was necessarily implied.

jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). Because Plaintiffs' claims arose, at least in part, at federal enclaves, the claims involve a federal question, and 3M may remove this action under 28 U.S.C. § 1441(a).

Removal is timely because this action was served on 3M on August 21, 2020. Venue is proper pursuant to 28 U.S.C. §§ 103 and 1442(a) because the Fourth Judicial District is located within this District. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Fourth Judicial District.

## **BACKGROUND**

The CAEv2 is an earplug developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments. CAEv2 has a yellow end and green end. Each end has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noise.

In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, that satisfy the operational and budgetary needs of the nation's fighting forces. This litigation involves a classic example of that military-contractor collaboration.

CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM). Ohlin and his program gave direction to Aearo to ensure that the CAEv2 would meet the military's operational needs. For example, Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2. Ohlin also specifically directed Aearo to shorten the CAEv2 so that it would be compatible with soldiers' headgear and would fit into a military-issued carrying case.[4]

Aearo later made the CAEv2 available for non-military uses, including the firing range, hunting, and law enforcement. These were sold in a blister pack. The back of the blister pack included a set of instructions and the Noise Reduction Rating (NRR) identified by the military and required by federal regulation. An additional lengthier set of instructions were also prepared to be inserted inside the blister pack. The "Fitting Tips" stated: "Fitting is easier if ear is pulled upward and outward during insertion and is also improved if the sealing rings of the outward directed plug are rolled back upon themselves." Aearo approached Ohlin for his review of the instructions. Dr. Ohlin said the inserted set of instructions "[l]ooks great" but observed that the instructions lacked language on "potential sizing issues for the smaller ear canals and single-sided version [of the earplugs] as an alternative." Aearo updated its instructions to include this language.

---

[4] Ohlin's involvement continued following the military's decision to purchase and deploy the CAEv2. He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

In sum, the CAEv2 was launched at the request of, and designed in close coordination with, the U.S. military. The CAEv2 sold to civilians used the same design as those created in coordination with the U.S. military. And the labels and instructions included when sold commercially incorporated feedback from the U.S. military.

## BASES FOR FEDERAL JURISDICTION AND REMOVAL

### I. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts that occurred at least in part "*because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137. Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of s 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the

6

defendant's actions and the official authority; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. Cal.*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, *In re 3M*, 2020 WL 365617 at *1; *Ayo v. 3M Co.*, No. 18-CV-0373 (JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case where product liability was sought for defendants' product's conformance with military specifications).

### A. The "Person" Requirement Is Satisfied.

The first requirement for removal under Section 1442 is satisfied because 3M is a "person" under the statute. "[T]he 'person' contemplated by the federal officer removal statute includes corporations." *Jacks*, 701 F.3d at 1230.

### B. The "Acting Under" Requirement Is Satisfied.

To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (*quoting Watson*, 551 U.S. at 152). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016); *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are

broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed."'") (*quoting Watson*, 551 U.S. at 147).

The "acting under" requirement is met here because Plaintiffs challenge Defendants' conduct while designing, testing, and writing instructions for the CAEv2. As discussed above, Aearo designed and manufactured the CAEv2 at the direction of the U.S. military to meet the military's specific needs to provide hearing protection and developed fitting instructions in coordination with the U.S. military.

The military directed and approved the design of the CAEv2, including its length, and edited and approved the instructions included with the commercial product. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Isaacson*, 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself.").

### C. The "Causation" Requirement Is Satisfied.

The third prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants'

theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute")).[5] In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here, Plaintiffs' claims arise from Defendants' production and sale of CAEv2 to the specifications approved by the military. Plaintiffs allege that the design of the CAEv2 is defective and that the instructions for the CAEv2 were inadequate. Aearo developed and designed the Combat Arms™ earplugs, including the instructions included with the commercial product, at the direction of federal officers.

Further, even if Plaintiffs were to prove that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harms alleged. *Id.* at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by

---

[5] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

the federal Government, is one for the federal—not state—courts to answer." *Id.* (*citing Willingham*, 395 U.S. at 409.). This Court has addressed this precise activity in another case, and found that 3M had "demonstrate[ed] that the warnings and instructions for its earplugs plausibly have some connection to, or association with, governmental actions," meeting the "initial low hurdle" to meet this requirement. *Graves*, 2020 WL 1333135 at *8.

### D. The "Colorable Federal Defense" Requirement Is Satisfied.

The fourth requirement (establishing a "colorable federal defense") is satisfied by 3M's assertion of the government contractor defense and the combatant activities defense. Courts around the country have held that the government contractor defense and the combatant activities defense support removal under § 1442(a)(1). *See, e.g.*, *Jacks*, 701 F.3d at 1234-35 (government contractor defense supports removal under § 1442); *Isaacson*, 517 F.3d at 139 (same); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Circuit 2017) (same); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442).

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks*, 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id.* (*citing Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.").)

At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[6] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

### 1.  3M Has a Colorable Government Contractor Defense.

Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. This defense extends to failure-to-warn claims. *Graves*, 2020 WL 1333135 at *8 n.3; *see also Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 211 (4th Cir. 2016) ("[W]e

---

[6] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

now join the chorus and hold that the government contractor defense is available in failure to warn cases." (collecting cases)). 3M has satisfied each of these elements for purposes of removal.

The government contractor defense applies to claims base on alleged defects in the instructions and label elements provided by the military. Plaintiffs do not allege whether the CAEv2 they used were issued by the military or purchased commercially. (Compl. at ¶¶ 15, 23, 27, 31, and 35 (each plaintiff alleging only that he "did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M [CEAv2] or a warning that the earplug would not be effective if he did not do so.").) But the military reviewed and approved the instructions for both the military and commercial versions of the CAEv2. Aearo also did not fail to inform the government of known dangers when it approved the specifications and instructions. First, there was no known danger Defendants were obligated to disclose. The CAEv2 met the military's attenuation expectations for dual-ended earplugs with or without the flanges folded back. Second, to the extent there were "dangers," Aearo's engineers did inform the government of its testing results and the fitting issues created by the military's request to shorten the product. And third, the military was also fully aware of any issues as a result of its own testing and use of the CAEv2. *See e.g.*, *Zinck v. ITT Corp.*, 690 F. Supp. 1331, 1332–33, 1337–38 (S.D.N.Y. 1988) (finding military's field tests alerted the military to product limitations); *Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 900-01, 905 (D.D.C. 1996) (finding government was "independently aware" of product limitations as a result of its own "extensive testing" and long use).

Moreover, 3M's government contractor defense regarding the allegedly defective design of the CAEv2 applies to Plaintiffs' failure-to-warn claims. District courts have repeatedly held that duty-to-warn claims "merely repeat design defects" where they only allege that a defendant failed to warn that the product "had not been properly designed, manufactured, assembled and tested." *Koutsoubos v. Boeing Vertol, Div. of Boeing Co.*, 553 F. Supp. 340, 344, 344 n.6 (E.D. Pa. 1982), *aff'd*, 755 F.2d 352 (3d Cir. 1985); *see also Nicholson v. United Techns. Corp.*, 697 F. Supp. 598, 603 (D. Conn. 1988) ("In some cases, duty to warn claims merely repeat design defects.").

Here, the crux of Plaintiffs' allegations is that the CAEv2 were defectively designed because they did not meet the military's performance standards without special fitting instructions. (Compl. at ¶ 52 (alleging the CAEv2 could only achieve an NRR of 22 "using [a] manipulated test protocol"); ¶ 59 ("Defendants' failure to warn about the need for special fitting instructions for the [CAEv2] caused Plaintiffs to suffer hearing loss and tinnitus."); achieving an NRR of 22 is only important because it is the level of protection required by the military standards). 3M's defense is that the CAEv2 *did* comply with U.S. military specifications, so no special fitting instructions or warnings were necessary. *See Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 577 (S.D.N.Y. 2011) ("where 'failure to warn claims are themselves premised on defective design claims found to be preempted, the . . . failure to warn claims are also preempted [by] federal law.'"), *aff'd sub nom. Butnick v. Gen. Mots. Corp.*, 472 F. App'x 80 (2d Cir. 2012).  3M is entitled to litigate that federal defense in federal court.

### 2.  3M Has a Colorable Combatant Activities Defense.

The "combatant activities defense" is a complete defense for claims arising out of combat activities. Although Congress waived sovereign immunity for tort claims against the United States and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant activities of the military or armed forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The combatant activities exception has been applied to contractors to create a federal defense shielding manufacturers from tort claims arising from war. *See, e.g.*, *Saleh v. Titan Corp.*, 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war."). The combatant activities defense is broader than the government contractor defense under *Boyle* because it acts like "field preemption because it casts a[n] immunity net over any claim that *arises* out of combat activities."  *Saleh*, 580 F.3d at 6 (emphasis in original; internal citation omitted).

Application of the defense has two elements: (1) the presence of combatant activities; and (2) that such activities occur during a time of war. The combatant activities element has been liberally construed and is not limited to the exertion of physical force. *See Johnson v. U.S.*, 170 F.2d 767, 770 (9th Cir. 1948). Rather, "activities both necessary to and in direct connection with actual hostilities" are included. *Id.* Ammunition supply, troop movement and logistical support, and holding prisoners of war have all qualified as

combatant activities under the test. *See Aiello v. Kellogg, Brown & Root Servs.*, 751 F. Supp. 2d 698, 706 (S.D.N.Y. 2011).

Each factor is satisfied here for Plaintiffs Harlan, Lara, and Wilkinson. The Complaint those Plaintiffs suffered hearing loss and/or tinnitus due, at least in part, to their involvement in combat-related activities. (Compl. at ¶ 13 (Plaintiff Harlan operated trucks "between various military bases, with the majority of his time spent working on Balad Air Base in Iraq."); ¶ 26 (Plaintiff Lara "was exposed to extremely loud sounds including gunfire, artillery, and helicopters" during his work.); ¶ 33 (Plaintiff Wilkinson's work for the Department of Defense subjected him to "regular exposure to explosives and weaponry").) Claims in such circumstances fall within the scope of the combatant activities defense. *See e.g.*, *Bentzlin*, 833 F. Supp. at 1492-95 (concluding that claims brought against missile manufacturer for causing death of U.S. soldiers as a result of alleged product defect were barred by combatant activities defense); *Aiello*, 751 F. Supp. 2d at 712–13 ("an injured civilian contractor's claim" based on injuries incurred at a forward operating base in Iraq "would fall comfortably within the combatant activities exemption to the FTCA").

Accordingly, 3M is immune from tort claims arising from Plaintiffs' harms suffered while they were engaged in combatant activities. This defense separately supports federal question jurisdiction under Section 1442 and removal to this Court

## II.   REMOVAL IS ALSO PROPER BECAUSE PLAINTIFFS' CLAIMS AROSE IN PART AT FEDERAL ENCLAVES.

In addition, removal of this action is proper because at least some Plaintiffs' claims certainly arose, at least in part, at federal enclaves. To that extent, their claims are governed

by federal law and are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Thus, this action is removable under 28 U.S.C. § 1441(a).

"A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted). The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision. *See, e.g.*, *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose*, 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress. Rights arising under such assimilated law,

16

arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

Federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves. *See, e.g.*, *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal enclave). It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g.*, *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012) (affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court).

Plaintiffs do not specifically identify where they were issued and/or used the CAEv2 and allegedly suffered hearing damage. Plaintiffs Harlan, Janice, Lara, and Wilkinson allege facts that indicate their injuries arose, at least in part, on federal enclaves. (Compl. at ¶ 13 (Plaintiff Harlan alleges he worked "between various military bases"); ¶ 21 (Plaintiff Janice alleges he worked "for the Department of Defense"); ¶ 25 (Plaintiff Lara alleges his work exposed him to "gunfire, artillery, and helicopters"); ¶ 33 (Plaintiff Wilkinson alleges he was injured while "repairing power plants" as "a civilian for the Department of Defense.").) One or more of the events contributing to these Plaintiffs' undoubtedly occurred at a facility or areas that qualifies as a federal enclave. *See Jamil v.*

*Workforce Res., LLC*, Case No.: 18-CV-27-JLS (NLS), 2018 WL 2298119, at *2 (S.D. Cal. May 21, 2018) (inferring from Complaint that some of the alleged events must have occurred at Marine Corps base, a federal enclave, and denying motion to remand). Plaintiffs cannot avoid federal enclave jurisdiction by omitting references to federal enclaves. *See Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1329 (N.D. Ala. 2010) (a plaintiff claiming injury from exposure to asbestos "cannot avoid the federal enclave jurisdiction simply by . . . leaving out those times he was exposed while working in a federal enclave."). Because these Plaintiffs' claims certainly arose, at least in part, at federal enclaves, this Court has subject matter jurisdiction over the action, and removal is proper under 28 U.S.C. § 1441(a).

## CONCLUSION

For all the foregoing reasons, 3M hereby removes this action from the Fourth Judicial District Court of Minnesota, Hennepin County, to this Court. As noted above, co-defendant Aearo Technologies LLC consents to this removal.

18

Dated: September 11, 2020     Respectfully submitted,

*s/ Benjamin W. Hulse*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
S. Jamal Faleel (MN #0320626)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
   bhulse@blackwellburke.com
   jfaleel@blackwellburke.com

**Counsel for Defendant 3M Company**